El Pueblo et al., Peticionarios, v. Arrillaga, Demandado.

No. 207.—Resuelto en julio 13, 1922.

*Mandamus*—Traslado de Fiscales—Facultades del Attorney General y del Gobernador.—No procede la expedición de un auto de *mandamus* para hacer cumplir a un fiscal la orden de traslado que recibiera del Attorney General, cuando tal orden fué anulada por el Gobernador en uso de las facultades de inspección y control que sobre todos y cada uno de los departamentos ejecutivos del gobierno le conceden los artículos 12 y 13 del acta orgánica.

Id.—Es un principio unánimamente admitido por la jurisprudencia de los tribunales americanos que para expedir un *mandamus* debe aparecer *prima facie* que no existe otro remedio adecuado en la ley, porque el objeto del auto no es reemplazar remedios legales sino suplir la falta de ellos.

Id.—Es requisito indispensable para poder solicitar un auto de *mandamus* que el acto que debe ser hecho o el deber que ha de ser cumplido, sea perentorio o ministerial en su carácter para distinguirlo de aquellos actos o deberes que son discrecionales.

Opinión personal del Juez Asociado Sr. Franco Soto.

En mayo 31 de 1922, el Attorney General de Puerto Rico dispuso el traslado del Fiscal del Distrito Judicial de San Juan, Primer Distrito, al Distrito Judicial de Mayagüez, por medio de una orden escrita, la que literalmente dice:

"Department of Justice of Porto Rico.—Office of the Attorney General.—San Juan, mayo 31, 1922.—Hon. Rafael Arrillaga Urrutia, Fiscal del Primer Distrito, San Juan.—Señor:—Por la presente, en virtud de la autoridad conferídame por la ley, le ordeno a usted que proceda inmediatamente a trasladarse al Distrito de Mayagüez y hacerse cargo de la Fiscalía de dicho distrito hasta nueva orden de este Departamento, haciendo entrega de todos los asuntos que

tenga usted bajo su conocimiento al Hon. Domingo Massari, Fiscal del Segundo Distrito de San Juan.—Atentamente, Salvador Mestre, Attorney General.''

El fiscal Arrillaga implícitamente manifestó su intención de no cumplir la orden de traslado, pues si bien no contestó directamente al Attorney General, con fecha 2 de junio de 1922 radicó en la Corte de Distrito de San Juan, Primer Distrito, la siguiente moción que dice:

"Primer Distrito Judicial de San Juan.—En la Corte de Distrito.—*Ex parte,* El Fiscal del Distrito Primero de San Juan, Distrito Primero, Peticionario.—908.—Moción.—Comparece el fiscal que suscribe y respetuosamente ante esta Hon. Corte expone:—Que en el día de hoy presentó el que suscribe una moción y fué radicada en la Secretaría de la Corte, que en síntesis suplica a la Corte dicte una orden dirigida al Attorney General de Puerto Rico o a cualesquiera de sus *assistants,* para que hicieran entrega al Fiscal que suscribe de todos los papeles y demás documentos concernientes a la investigación llevada a cabo por el Gran Jurado, contra el Sr. E. Mont. Reily, J. R. Hull y W. Kessinger.

"Que hace como una hora recibí del Hon. Attorney General una comunicación en la cual se me ordena trasladarme a Mayagüez y entregara al Fiscal Domingo Massari todos los papeles, documentos y archivos de esta Fiscalía; como la comunicación del Attorney General no se ajusta a lo que preceptúan los artículos 64 del Código Político y 49 de la Ley Jones, que en sentir del fiscal que suscribe supedita al mismo artículo 46 del Código Político, la dicha comunicación del Attorney General, no tiene efecto ni valor ninguno y continuo siendo por tanto el Fiscal del Distrito Judicial de San Juan, Distrito Primero. Y como tal Fiscal de la Corte del Primer Distrito de San Juan, ratifico la moción presentada y radicada en la Secretaría y suplico a la corte se sirva dictar una orden por sus méritos.—San Juan, P. R., junio 2, 1922.—(Fdo.)  Rafael Arrillaga Urrutia, Fiscal del Distrito Primero.''

A virtud de la negativa expresa del fiscal Arrillaga y que resulta de la moción que antecede, el Attorney General recurrió ante esta corte solicitando se expida un auto de *man-*

*damus* perentorio, dirigido a Rafael Arrillaga Urrutia, Fiscal del Distrito Judicial de San Juan, Primer Distrito, para que inmediatamente cumplimente la repetida orden de traslado, que hemos transcrito más arriba.

Esta corte expidió una orden, de acuerdo con la sección sexta de la Ley sobre *Mandamus* de 1903, para que el demandado compareciera ante esta corte y mostrara causa, si alguna tuviere, para que no se expidiera el auto de *mandamus* solicitado. Oídas las partes, el demandado alegó varias razones para fundar su negativa y especialmente alegó lo siguiente:

"Y finalmente alega el compareciente, en oposición a dicha solicitud y al remedio en ella solicitado, que el día 6 de junio de 1922 el Gobernador de Puerto Rico dirigió al compareciente y recibida ésta el día 7 del propio mes y año, la siguiente comunicación:

"'San Juan, Puerto Rico.—Junio 6, 1922.—Hon. Rafael Arrillaga.—Fiscal del Primer Distrito Judicial de San Juan.—San Juan, P. R.—Estimado señor:—Por cuanto se me ha llamado la atención hacia que el Attorney General de Puerto Rico ha ordenado su traslado como Fiscal del Primer Distrito de San Juan, Puerto Rico, al Distrito de Mayagüez, y no apareciendo causa justificada para ello, y no expresándose por el Attorney General ninguna para dicho traslado, y como usted no fué nombrado ni comisionado como Fiscal del Distrito de Mayagüez sino como Fiscal del Primer Distrito de San Juan, y por cuanto el Código Político de Puerto Rico sólo autoriza al Attorney General para trasladar fiscales por causas especiales que se demuestren, y en este caso no se ha expresado razón alguna justificada, sino que por el contrario aparece que dicha orden no fué dada de acuerdo con la ley.—Por tanto, por y en virtud de la autoridad confierídame por la sección 12 del Acta Orgánica, por la presente anulo y rescindo dicha orden, con instrucciones a usted de que cumpla con los deberes del cargo para que fué nombrado y comisionado por mí.—Dada en mi oficina en la ciudad de San Juan, hoy 6 de junio, 1922.—(Firmado) E. Mont. Reily, Gobernador.'"

La orden del Attorney General se funda en la sección 64 del Código Político, que en su segundo párrafo dispone:

"Sección 64.—El Attorney General en casos especiales podrá dis-

poner que el fiscal de un distrito cambie de lugar con el fiscal ·de otro distrito por el tiempo que el Attorney General juzgare necesario.''

El peticionario cita además el artículo 14 de nuestra Acta Orgánica, que prescribe:

''Artículo 14.—El Attorney General tendrá a su cargo la administración de justicia en Puerto Rico.''

Estas disposiciones, se alega por el Attorney General, que serían base bastante para la expedición de la orden por la que se impone al fiscal Arrillaga el deber de trasladarse al Distrito Judicial de Mayagüez.

La sección 64 del Código Político *"prima facie"* concede la facultad al Attorney General de poder ordenar el traslado de un fiscal de un distrito a otro distrito pero tal facultad no es arbitraria y la misma prescripción legal la limita a casos especiales, pero existe una circunstancia tan especial en el presente caso que hace que la cuestión suscitada por la sección 64 mencionada no tenga toda la transcendencia que debió tener en lo que se refiere a su alcance e interpretación en estos momentos, toda vez que la intervención del Gobernador rescindiendo la orden de traslado expedida por el Attorney General al fiscal Arrillaga da otro aspecto al problema jurídico que se nos presenta y cambia enteramente en nuestro concepto la situación de las cosas. La cuestión, pues, ha tomado otro giro y lo que tenemos ante nos para resolver es una controversia que podemos calificar de doméstica dentro de un mismo departamento del gobierno, o sea, dentro de la rama ejecutiva. En tales circunstancias, nuestra pregunta es la siguiente: ¿Cabe nuestra intervención en darle solución a una disputa puramente administrativa? ¿La expedición de un *mandamus* en este caso, no sería una revocación de la orden del Gobernador de Puerto Rico en quien reside el poder ejecutivo supremo? Tampoco puede nunca interpretarse que tal poder, por ser supremo, pueda ser arbitrario. Es

una verdad, que afortunadamente no podemos negar, que estamos regidos por un gobierno de ley y estas controversias así lo indican y, por consiguiente, no podríamos desatender la disposición 64 del Código Político si no hubiera otro precepto en nuestra Ley Orgánica de superior alcance y que tal vez limita o anula aquella disposición en sus efectos. El artículo 12 de nuestra Ley Orgánica establece que el Gobernador "tendrá la inspección y control de todos los departamentos y negociados del Gobierno de Puerto Rico, en todo aquello que no sea incompatible con las disposiciones de esta ley". Nosotros creemos que la prescripción del Acta Orgánica en ese extremo no es inconsistente con el artículo 14 de la misma constitución orgánica, en la que se consigna que el Attorney General tendrá a su cargo la administración de justicia en Puerto Rico. Esto es consecuencia lógica de la naturaleza del cargo de consejero legal del gobierno pero los términos que usa la ley no envuelven una supremacía sobre las facultades del jefe ejecutivo porque el Departamento de Justicia es una de las ramas del poder ejecutivo al igual que las demás ramas a que se refiere el artículo 13 de dicha Ley Orgánica. Este último artículo dice así:

"Artículo 13.—Por esta Ley se crean los siguientes departamentos ejecutivos: un Departamento de Justicia, cuyo jefe será conocido con el nombre de Fiscal General; un Departamento de Hacienda, cuyo jefe será llamado Tesorero; un Departamento del Interior, el jefe del cual será conocido como Comisionado del Interior; un Departamento de Instrucción, cuyo jefe será designado con el nombre de Comisionado de Instrucción; un Departamento de Agricultura y Trabajo, el jefe del cual se llamará Comisionado de Agricultura y Trabajo; y un Departamento de Sanidad, cuyo jefe se conocerá con el nombre de Comisionado de Sanidad. El Fiscal General y el Comisionado de Instrucción serán nombrados por el Presidente, con el concurso y consentimiento del Senado de los Estados Unidos; desempeñarán sus cargos por el término de cuatro años y hasta que sus sucesores sean nombrados y tomen posesión, a menos que antes sean destituídos por el Presidente. Los jefes de los cuatro depar-

tamentos restantes serán nombrados por el Gobernador con el concurso y consentimiento del Senado de Puerto Rico. Los jefes de departamento nombrados por el Gobernador desempeñarán sus cargos por el término de cuatro años y hasta que sus sucesores sean nombrados y tomen posesión, a menos que antes sean destituídos por el Gobernador.

"Los jefes de departamento residirán en Puerto Rico durante el término de su cargo oficial, y los nombrados por el Gobernador deberán haber residido en Puerto Rico por lo menos un año antes de su nombramiento.

"Los jefes de departamento constituirán colectivamente una junta consultiva del Gobernador, que se conocerá con el nombre de Consejo Ejecutivo. Desempeñarán bajo la inspección general del Gobernador, los deberes que más adelante se prescriben, o que en lo sucesivo se prescribieren por ley, y aquellos otros deberes, no incompatibles con la ley, que el Gobernador, con la aprobación del Presidente, les asignare; y harán al Gobernador un informe anual y los demás informes que él les pidiere, los cuales serán transmitidos al departamento ejecutivo del Gobierno de los Estados Unidos que designará el Presidente, según en la presente se provee; *Disponiéndose,* que los deberes que se imponen en esta Ley a los jefes de departamento no llevarán consigo ninguna compensación adicional."

Se pueden ver, sencillamente, de los artículos subsiguientes, del 14 al 19 del Acta Orgánica, los deberes de cada jefe de departamento empezando por los del Attorney General, los que serán desempeñados según los artículos 12 y 13 citados bajo el control e inspección del Gobernador como jefe supremo del poder ejecutivo. Cada jefe de departamento tiene a su cargo, como tal jefe, todo lo relativo a su departamento; así, por ejemplo, el Comisionado de Sanidad tiene a su cargo todos los asuntos relacionados con su departamento y así los demás comisionados de que nos habla la ley: Pero esas facultades deben coexistir, cuando no limitadas o restringidas, por las que tiene el Gobernador en cuanto a la inspección y control de dichos departamentos y no inconsistentes, desde luego, con lo que se dispone en la misma Ley Orgánica.

Podemos decir, por consiguiente, que las palabras de que se vale la Ley Orgánica diciendo que el Attorney General tendrá a su cargo la administración de justicia, no hacen de dicho departamento una rama autónoma e independiente en relación con las facultades de inspección y control que la Ley Orgánica inviste en el Gobernador de Puerto Rico respecto a todos y a cada uno de los departamentos ejecutivos del gobierno. Por supuesto que el control de que habla la ley no puede ser nunca arbitrario, si entendiéramos por "control" mandar sin traba alguna pero sí en el sentido de "gobernar, impedir, restringir, regular," que son las palabras que podemos leer en el Diccionario Salvat, diciendo lo que significa la palabra "control". El control, ya lo dice la Ley Orgánica, se ejercerá siempre que no sea inconsistente con la misma ley. Así también cada jefe de departamento tiene el control de la rama ejecutiva de que es jefe y su poder tampoco puede ser arbitrario y estará limitado por la ley misma. Si dentro del poder ejecutivo se originan acontecimientos que constituyen rencillas domésticas o intestinas de carácter puramente administrativo, no es el poder judicial el llamado a ejercer su intervención para solucionar el conflicto o la anormalidad que haya surgido. Nosotros podríamos comparar tal situación a la suscitada en relación con el poder legislativo en el caso de *De Diego et al.* v. *La Cámara de Delegados,* 5 D. P. R. 234. En este caso se dijo por esta Corte Suprema, por voz del eminente Juez MacLeary, lo siguiente:

"Una solicitud a una corte judicial para un *mandamus* contra un cuerpo legislativo, obligándolo a expulsar a uno o más de sus miembros, es una anomalía en la jurisprudencia americana. Hasta donde he llegado en mis pesquizas ningún caso semejante ha podido encontrarse en los anales de litigios americanos. Ciertamente no existe semejante caso en los informes de las decisiones de la Corte Suprema de los Estados Unidos."

En ese mismo caso la solicitud de *mandamus* se fundaba en una disposición del Código Político que, en forma impe-rativa, declaraba vacante el puesto de un miembro de la Cá-mara de Delegados que permaneciera ausente de sus tareas por más de cinco días consecutivos sin el permiso de la Cá-mara. El Código Político, de una manera ·preceptiva, em-pleaba estas palabras: "Se considerará su cargo vacante." Sin embargo, la Ley Orgánica que regía entonces, conocida por la Ley Foraker, estaba en pugna con aquella disposición del Código Político y en conexión con esto esta Corte Su-prema dijo:

"Bajo la sección de la ley citada (sección 30 de la Ley Foraker) la Cámara tuvo poder amplio para considerar y determinar si esta-ban o no estaban vacantes los asientos mencionados, como se ha dicho en la presente, lo que ha resultado negativamente, no obstante el texto de la sección 210 del Código Político arriba citada." 5 D. P. R. 238.

Síguese diciendo en la misma opinión, página 242 (bas-tardilla nuestra:

"Este lenguaje |*refiriéndose a la Constitución de los Estados Uni-dos, al definir los poderes del Congreso en la sección quinta del artículo primero*) es muy parecido a la sección de la Ley Foraker arriba citada, que hace la definición de los poderes de nuestra Asam-blea Legislativa, y probablemente esta provisión en la. Constitución, así como la conocida independencia del Departamento Legislativo del Gobierno Nacional, haya impedido hasta ahora que se formulara una petición en ningún tribunal de los Estados Unidos, como la que aquí se presenta. Resulta claro de la falta de autoridades sobre este punto y de una lectura de los estatutos y de la naturaleza del sistema de gobierno americano, que no hay lugar al· auto de *man-damus* en un caso como el que aquí se ha presentado."

Así podemos decir que a pesar del razonado alegato del Attorney General se observa del mismo una falta o ausencia de autoridades referentes a casos análogos o semejantes al

presente en los tribunales de los Estados Unidos. Y es que no podía ser de otro modo si no olvidamos el sistema del gobierno americano que se funda en el sabio principio de la independencia y coexistencia de poderes, el que si bien ya es cuestión elemental en la práctica del gobierno americano, fué un principio que ya había traído Montesquieu a la discusión filosófica como una verdadera ciencia de gobierno en su obra Espíritu de las Leyes, en donde se puede ver desarrollada la teoría de la independencia de poderes.

" 'El departamento judicial y el ejecutivo están constituídos en forma distinta e independiente,' dice Berry, J., 'y como a ninguno se le hace responsable al otro por el cumplimiento de sus deberes, tampoco ninguno puede obligar al cumplimiento de los deberes del otro.' La tentativa por parte de algunas cortes a intervenir en el cumplimiento de los deberes ejecutivos no solamente se opone a nuestra teoría de gobierno y es en exceso de sus facultades, sino que también envuelve gran peligro. Si las cortes pueden intervenir con el cumplimiento de cualesquiera deberes ministeriales del departamento ejecutivo del gobierno, ellas pueden hacerlo con todos, y tendríamos el caso singular de un gobierno dirigido por las cortes en vez de los funcionarios prescritos por la Constitución. Cada departamento del gobierno es esencial y necesariamente distinto de los otros, y ninguno puede legalmente invadir o intervenir con las facultades del otro; y nuestra seguridad tanto en cuanto al Gobierno Nacional y del Estado depende grandemente de la conservación de la distribución de poderes y autoridad prescritos en la Constitución, y las leyes decretadas de acuerdo con la misma. Si el Gobernador rehusa o se niega a cumplir con sus deberes y se excede en sus facultades en casos flagrantes, existe amplio remedio mediante procesamiento y separación del cargo. No se cree que las cortes tienen la facultad de cumplir por él sus deberes, o de expresar lo que él deberá o no hacer. Sea cual fuere el poder de una corte, lo ejercitará con gran cautela cuando tenga que intervenir con la actuación de funcionarios ejecutivos de Estado, y el derecho de una parte al remedio solicitado no sólo debe estar fuera de duda o discusión sino que también deberá aparecer que el funcionario no tiene ningún poder discrecional sobre el asunto." Wood sobre *Mandamus*, págs. 87 y 88.

Los sanos y admirables principios más arriba enunciados son beneficiosas y saludables enseñanzas, de aplicación a la presente controversia, y nos llevan como de la mano, más que nunca en circunstancias como las actuales, al deber ineludible, por respeto a la ley y para mantener nuestro prestigio como poder independiente y armónico, en no dejarnos arrastrar hacia el torbellino de luchas domésticas o administrativas de otro departamento también de acción independiente y autónoma dentro de la coexistencia general de poderes.

Es un principio unánimemente admitido por la jurisprudencia de·los tribunales americanos que para expedir un *mandamus* debe aparecer *"prima facie"* que no existe otro remedio adecuado en la ley, porque el objeto del auto no es reemplazar remedios legales sino suplir la falta de ellos.

"El peticionario, debe, por tanto, tener un derecho claro a la ejecución de un acto particular o deber a disposición del demandado y debe aparecer que la ley no concede ningún otro remedio adecuado para asegurar el cumplimiento del deber que se trata obligar a cumplir." 3 Estee, 797.

Nosotros creemos que otro remedio adecuado y eficaz existe y tal remedio sería la destitución del demandado de su cargo por desobedecer la orden administrativa de su superior, el Attorney General, pero tal vez.se nos diga que ese remedio no está al alcance del Attorney General y que su recomendación al Gobernador sería ineficaz dadas las circunstancias anormales del caso. Pero este es el conflicto y en el que sostenemos enfáticamente que esta Corte Suprema carece de jurisdicción para intervenir porque nuestras funciones son puramente para interpretar las leyes pero no para gobernar o decidir ejecutivamente cuestiones que enteramente pertenecen al orden interno de un departamento tan autónomo y respetable·en sus funciones como lo es.el nuestro. Si el Attorney General intentara valerse de ese medio y expresara

las razones del mismo, no importa que no consiguiera su objeto, ya que la decisión dependía de la facultad del Gobernador con quien está en pugna. El habría cumplido con su deber, si tuviera razón, y en este caso podríamos citar como de aplicación uno de los párrafos de la argumentación del Attorney General Cushing, tomo 58 U. S., pág. 287, que dice:

"Que el deber impuesto por la Constitución al Presidente de 'cuidar que las leyes sean fielmente cumplidas' requiere absolutamente que tenga él la facultad para separar a funcionarios incompetentes, negligentes, desobedientes o infieles; que sin la facultad de separar el Presidente carecería de los medios de desempeñar el deber de hacer que las leyes sean fielmente cumplidas; y si él no tuviera los medios no podría justamente hacérsele responsable de su incumplimiento."

De manera que si no está al alcance del Attorney General el medio de destitución del demandado no podemos con toda justicia hacerle responsable por la falta de medios para hacerlo. El nombramiento del Attorney General no depende del Gobernador; es de nombramiento presidencial y si en sus diferencias con su superior jerárquico creyese coartados los intereses de la justicia, él tiene el medio expedito para hacerlo así presente al Presidente de la Nación, el que tiene en sus manos el derecho de destitución así del Gobernador como de los jefes de departamentos nombrados por él mismo.

Además, otro requisito indispensable para poder solicitar un auto de *mandamus* es que el acto que debe ser hecho o el deber que ha de ser cumplido, sea perentorio o ministerial en su carácter para distinguirlo de aquellos actos o deberes que son discrecionales. Nuestro estatuto dice lo siguiente:

"Sección 2.—El auto de '*mandamus*' podrá dictarse por el Tribunal Supremo o por las cortes de distrito o por cualquiera de sus magistrados o jueces cuando se hallen en el ejercicio de sus funciones o en sus oficinas, y se dirigirá a cualquier tribunal inferior, corpo-

ración, junta o persona obligada al cumplimiento de un acto que la ley particularmente ordene como un deber resultante de un empleo, cargo o función pública; pero aún cuando puede requerir a un tribunal inferior o a cualquiera de sus jueces para que adopte este criterio, o para que proceda al desempeño de cualquiera de sus funciones, el auto no puede tener dominio sobre la discreción judicial." Leyes de 1903, págs. 116 y 117.

La consecuencia que implica la disposición legal inserta es que si aún esta corte tuviera poder para expedir el auto de *mandamus,* no podríamos expedirlo en el presente caso porque el artículo 64 del Código Político da un poder discrecional al Attorney General para expedir la orden de traslado a cualquier otro fiscal de la Isla o para rescindir la orden a su voluntad y porque existe además la creación de un Fiscal Especial el que podía atender en cualquier momento la emergencia que había de justificar una orden de traslado. Siendo discrecional en el Attorney General la autoridad que le concede el Código Político en ese extremo, no puede convertirse en ministerial en sus efectos al expedirse una orden de traslado, y siempre tendríamos el mismo caso a que nos referimos más antes de *De Diego* v. *Cámara de Delegados,* en donde se puede ver que a pesar del carácter perentorio o de un imperativo legal, en que están concebidos los términos del Código Político y en los que se funda la petición de *mandamus,* se dice que aún así la acción de la Cámara es discrecional y su acción no es meramente ministerial, la cual sólo es la que podía gobernarse por los tribunales, mediante el auto de *mandamus.* Dice la opinión de la corte, página 242: "En otras palabras, si el *Speaker* de la Cámara tuviera autoridad para declarar vacante el asiento de un miembro bajo ciertas condiciones, ejercitando su discreción, no habría lugar al *mandamus* de un tribunal contra él, obligándole a hacerlo, y mucho menos habría lugar al *mandamus* obligando a la Cámara a tomar tales medidas."

Y podemos terminar repitiendo las mismas o parecidas palabras del caso que acabamos de citar, diciendo: Por lo tanto, en ningún caso podría el peticionario en este caso lograr su objeto mediante el auto de *mandamus*. Esta corte jamás pretendería asumir una jurisdicción que no le está conferida por la ley, y no desea intervenir en los derechos y deberes de otros departamentos como el del poder ejecutivo en este caso.

El auto debe ser denegado.*

---

* Para los jueces concurrentes véase la página 949.