# 2004 DTA 125

**TRIBUNAL DE CIRCUITO DE APELACIONES
REGION JUDICIAL DE BAYAMÓN
PANEL XI**

MARVIN J. ROBLES DE JESÚS
Peticionario

v.

ESTADO LIBRE ASOCIADO DE PUERTO RICO, ADMINISTRACIÓN DE CORRECCIÓN
Peticionario

Núm. KLCE-04-00474

San Juan, Puerto Rico, a 30 de julio de 2004

Panel especial integrado por su Presidenta, la Juez Rodríguez de Oronoz,
el Juez Aponte Hernández y la Juez Peñagarícano Soler

Rodríguez de Oronoz, Jueza Ponente

**TEXTO COMPLETO DE LA RESOLUCIÓN**

Comparece por derecho propio el Sr. Marvin J. Robles De Jesús, solicitando que revoquemos una sentencia del Tribunal de Primera Instancia, Sala Superior de Bayamón, por medio de la cual se desestimó sin perjuicio un recurso de *mandamus* presentado por éste.

Examinados los autos y el derecho aplicable, se deniega el recurso solicitado.

# I

El confinado Marvin J. Robles De Jesús ("*Sr. Robles*") fue encontrado culpable del delito de asesinato en segundo grado por el Tribunal de Primera Instancia, Sala Superior de Bayamón, luego de hacer alegación de culpabilidad. Dicho foro lo sentenció a cumplir una pena de doce (12) años el 20 de enero de 1999.

Luego de cumplir el término mínimo de su sentencia, el Sr. Robles solicitó a la Administración de Corrección que lo refiriera a evaluación por el Programa de Supervisión Electrónica. La Administración de Corrección alegó que no podía considerar al Sr. Robles para dicho programa porque los convictos del delito de asesinato están excluidos de participar en el mismo, a tenor con lo dispuesto en la Ley Núm. 49 de 26 de mayo de 1995.

Agotado el trámite administrativo, el 12 de febrero de 2004, el Sr. Robles presentó un recurso de *mandamus* perentorio ante el Tribunal de Primera Instancia. Fundamentó su acción en que el reglamento del Programa de Supervisión Electrónica no excluia de los beneficios del programa a los convictos de asesinato en segundo grado. Por tanto, entendía el Sr. Robles que la Administración de Corrección tenía un deber ministerial de evaluarlo, referirlo o cualificarlo para el Programa de Supervisión Electrónica, a tenor con lo dispuesto en el Artículo VI, Sección 19 de la Constitución del Estado Libre Asociado de Puerto Rico y del Artículo 5 de la Ley Núm. 116 de 22 de julio de 1974.

El 19 de febrero de 2004, archivada en autos y notificada el 3 de marzo de 2004, el Tribunal de Primera Instancia emitió sentencia, desestimando el recurso sin perjuicio al entender que se estaba apelando una determinación de una agencia administrativa.

Inconforme, el Sr. Robles presentó recurso de *certiorari* ante este Tribunal señalando que erró el tribunal de instancia al desestimar la demanda de *mandamus* perentorio cuando su derecho es uno claro y no existe discreción del funcionario para cumplir con lo que se le solicita y sin antes darle la oportunidad a que tiene derecho de ser oído, presentar su prueba y tener su día en corte. Solicita que se revoque la sentencia recurrida y se devuelva el caso al tribunal de instancia para que resuelva el *mandamus* perentorio en los méritos y le ordene a la Administración de Corrección a cumplir con el deber ministerial de referir al Sr. Ramos para evaluación por el Programa de Supervisión Electrónica.

# II

El *mandamus* es un auto altamente privilegiado. Artículo 649 del Código de Enjuiciamiento Civil, 32 L.P. R.A. § 3421. Es el recurso adecuado para ordenar el cumplimiento de un deber impuesto por ley y es usado cuando no hay otro remedio legal, Demetrio Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, (Forum, 1993), página 567.

La cuestión medular planteada en todo pleito en donde esté solicitado el recurso de *mandamus,* es si existe o no un deber ministerial. El concepto de *"deber ministerial"* consiste en el deber impuesto por la ley que no permite discreción alguna en su ejercicio, sino que es mandatorio e imperativo. *Noriega v. Hernández Colón*, 135 D.P.R. 406 (1994); *Alvarez de Choudéns v. Tribunal Superior,* 103 D.P.R. 235, 242, (1974); *Espina v. Calderón*, 75 D.P.R. 76 (1953); *Partido Popular v. Junta de Elecciones*, 62 D.P.R. 745, 748 (1944); *Great American Indemnity v. Gobierno de la Capital,* 59 D.P.R. 911, 913 (1941); *Pueblo v. La Costa*, 59 D.P.R. 179 (1941); *Pagán v. Towner*, 35 D.P.R. 1, 3 (1926).

El Art. 651 del Código de Enjuiciamiento Civil, 32 L.P.R.A. § 3423, establece que no podrá expedirse el auto de *mandamus* en los casos en que exista otro recurso adecuado y eficaz en ley. El peticionario tiene que demostrar que no tiene otro remedio legal para hacer valer su derecho y para que se cumpla con un deber ministerial. *Hernández Agosto v. Romero Barceló*, 112 D.P.R. 407, 418 (1982). Además, el peticionario debe haber requerido previamente al funcionario para que cumpla con su deber ministerial. *Suárez v. Corte*, 65 D.P.

R. 850 (1940); *Espina v. Calderón, supra.* El deber del funcionario debe surgir de forma clara y patente, *Balasquide v. Luján,* 45 D.P.R. 563 (1933); *Santiago v. Tilen,* 71 D.P.R. 754 (1950). Por último, el peticionario debe tener un interés especial distinto al que pueda tener cualquier ciudadano. *Prensa Insular de Puerto Rico v. Cordero,* 67 D.P.R. 89 (1947).

El objeto de este recurso extraordinario no es reemplazar remedios legales, sino suplir la falta de ellos. *Colón v. Comisión de la Policía Insular,* 72 D.P.R. 892 (1951); *Pueblo v. Arrillaga,* 30 D.P.R. 952 (1922). En los casos donde se ha planteado el requisito de agotamiento del cauce administrativo antes de acudir al *mandamus,* se ha resuelto que *"[no] basta... con que los remedios administrativos sean lentos para que se justifique la preterición del requisito de agotamiento".* *Guadalupe v. Saldaña,* 133 D.P.R. 42, 50 (1993).

El deber ministerial que los funcionarios de la Administración de Corrección tienen que cumplir surge propiamente del Artículo VI, Sección 19 de la Constitución del Estado Libre Asociado de Puerto Rico. El mismo establece que: *"[s]erá política pública del Estado Libre Asociado [...] reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuente para hacer posible su rehabilitación moral y social".*

Cónsono con este mandato constitucional, la Ley Orgánica de la Administración de Corrección, Ley Núm. 116 de 22 de julio de 1974, según enmendada, 4 L.P.R.A. §§ 1101 *et seq.,* en su Artículo 5, dispone que la Administración de Corrección tiene, entre otras, las siguientes funciones, facultades, deberes y obligaciones:

*"(a) Estructurar la política pública en el área de corrección.*

*(b) Organizar los servicios de corrección con el propósito de que la rehabilitación tenga la más alta prioridad entre los objetivos del Gobierno del Estado Libre Asociado. A ese fin:*

*(1) Diseñar un nuevo sistema diversificado de instituciones, programas y recursos humanos que viabilice implantar un mejor tratamiento individualizado.*

*(2) proliferar la creación de instituciones de menor capacidad [...] que permita un tratamiento que ayude al miembro de la población correccional a retornar a la libre comunidad dentro del plazo más breve."* 4 L.P.R. A. § 1112.

En el segundo párrafo del inciso (3) de dicho Artículo 5, se añade de forma específica que:

*"Así mismo formulará [...] la reglamentación necesaria para establecer programas de supervisión electrónica, mediante los cuales la población correccional del sistema que cualifique par ello y voluntariamente acepte participar, pueda cumplir la sentencia fuera de la institución correccional."*

A tenor con lo dispuesto en los Artículos 4, 5 y 10 de la Ley Núm. 116, *supra;* de la Ley de Procedimiento Administrativo Uniforme (*"LPAU"*), Ley Núm. 170 de 12 de agosto de 1988, según enmendada, 3 L.P.R.A. §§ 2101 *et seq.;* y de los poderes conferidos por el Plan de Reorganización Número 3 de 28 de octubre de 1993, por el cual se creó el Departamento de Corrección y Rehabilitación, se promulgó el *"Reglamento para Establecer el Procedimiento para el Programa de Supervisión Electrónica"* (*"Reglamento Núm. 6041"*), Reglamento Núm. 6041, efectivo el 26 de noviembre de 1999. El mismo tiene como propósito el establecer los procedimientos para el Programa de Supervisión Intensa por Medios Electrónicos.

Los criterios de elegibilidad para participar en el mencionado programa están esbozados en el Artículo VI del Reglamento como sigue:

"*Sección 1. Será requisito esencial para su elegibilidad la aceptación voluntaria del participante para ser supervisado en su hogar por medios electrónicos.*

*Sección 2. El hogar en el cual residirá el participante, deberá contar con servicio telefónico o instalarse el servicio antes de la salida del participante. La instalación telefónica debe ser sencilla, no puede tener teléfono inalámbrico, ni otros servicios o aditamentos especiales.*

*Sección 3. El participante deberá estar clasificado en custodia mínima y debe haber cumplido el 10% de la sentencia; excluyendo las bonificaciones, conforme a lo dispuesto en la Ley Número 49 de 26 de mayo de 1995.*

*Sección 4. Al participante le deberán faltar tres (3) años o menos para ser elegible a Libertad Bajo Palabra.*

*Sección 5. En los casos en que no cualifique para Libertad Bajo Palabra según lo dispuesto en la Ley Número 118 de 22 de julio de 1974, según enmendada, deben faltarle tres (3) años o menos para extinguir el total de su sentencia.*

*Sección 6. El participante deberá contar con un plan de salida que cubra las siguientes áreas:*

*a. Hogar*

*b. Oferta de empleo o estudios, de estar disponible.*

*c. La opinión de la comunidad inmediata al hogar donde habrá de residir, deberá ser favorable para la concesión del privilegio.*

*Sección 7. Del expediente social de la institución y de la investigación realizada en la comunidad, se deberá evidenciar que el participante no constituye un riesgo para su propia seguridad, de la comunidad y de las partes perjudicadas.*

*Sección 8. La conducta del participante no debe representar riesgo de fuga.*

*Sección 9. El participante firmará un compromiso escrito, en el cual indique que cumplirá con las normas y condiciones que se le impongan (Véase Anejo I).*

*Sección 10. Se obtendrá un compromiso escrito del recurso familiar, en el cual se acepte al participante e indique la disponibilidad de su hogar y se responsabilice, igualmente, de informar cualquier incumplimiento de las normas por parte de éste (Ver Anejo II).*

*Sección 11. Los miembros de la población correccional que le aplique la Ley Núm. 28 de 1 de julio de 1997, deberán completar la certificación para el registro de personas convictas por delitos sexuales violentos y abusos contra menores.*

*Sección 12. Todo miembro de la población correccional cuya solicitud sea radicada con posterioridad a la vigencia de la Ley Número 175 del 24 de julio de 1998, deberá someterse a la toma de una muestra de sangre para el Banco de Datos ADN.*"

Además, el Artículo VII del Reglamento Núm. 6041 dispone que estarán excluidos para ser considerados para este privilegio las personas que están cumpliendo por los siguientes delitos:

"1. Asesinato 'en primer grado'.

2. Violación.

3. Incesto.

4. Sodomía.

5. Actos lascivos o impúdicos, cuando la víctima fuere menor de catorce (14) años. Cuando la víctima fuere mayor de catorce (14) años deberá tomar y haber completado el curso de 'Aprendiendo a Vivir Sin Violencia' del programa adscrito al Negociado de Evaluación y Asesoramiento, y que el terapista emita recomendaciones al respecto.

6. Violaciones a la Ley Núm. 4 de 23 de junio de 1971, conocida como 'Ley de Sustancias Controladas de Puerto Rico', excepto las violaciones al Artículo 404 de dicha Ley.

7. Delitos relacionados con el crimen organizado.

8. Delitos graves relacionados con la Ley de Explosivos o que atenten contra la seguridad pública, tales como: incendio, estragos, Ley de Armas, Fuga, entre otros.

9. Todo convicto por delito grave que haya sido declarado por el Tribunal reincidente agravado o reincidente habitual conforme a las disposiciones de la Ley Núm. 115 de 22 de julio de 1974, según enmendada.

10. Se excluirán también para ser considerados para este privilegio, aquéllos que mediante investigación por la División de Drogas y Narcóticos de la Policía de Puerto Rico, así como por cualquier otra agencia de ley y orden, sean identificados como traficantes de drogas.

11. Miembros de la población correccional cumpliendo sentencia en el Sistema Correccional de Puerto Rico y en el que exista una Orden de 'Detainer' por el Departamento de Inmigración y Naturalización, una Orden de 'Detainer' o 'Warrant' de otro Estado de Estados Unidos o de cualquier autoridad legal con competencia.

12. Miembros de la población correccional sentenciados por el delito de fuga o tentativa de fuga o que se hayan evadido de algún programa o incumplido las condiciones de una medida de libertad condicional, serán considerados luego de haber transcurridos tres (3) años a partir de la fecha de sentencia o revocación del privilegio.

13. Miembros de la población correccional que no hayan cumplido con la pena especial dispuesta por la Ley Núm. 183 de 29 de julio de 1998, conocida como 'Ley Para la Compensación a Víctimas de Delito'."

El Sr. Robles alega que cumple con los criterios dispuestos por ley para ser referido, evaluado y elegible para el programa de supervisión electrónica. Argumenta que la Administración de Corrección se niega a referirlo para ser evaluado por dicho programa aduciendo que éste está excluido de ser referido, evaluado y elegible por haber cometido el delito de asesinato en su modalidad de segundo grado, a tenor con lo dispuesto en la Ley Núm. 49 de 26 de mayo de 1995 que excluye, en términos generales, los asesinatos de los beneficios de supervisión electrónica y otros programas de rehabilitación.

La Ley Núm. 49 de 26 de mayo de 1995, enmendó la Ley Núm. 116, *supra*, añadiendo el Artículo 10-A

que, en lo pertinente, dispone:

*"No serán elegibles para participar en los programas de desvío o tratamiento y rehabilitación establecidos por la Administración, de conformidad con las facultades que le confiere esta Ley, ni en el Programa de Hogares de Adaptación Social, las siguientes personas:*

*(a) Toda persona convicta que esté cumpliendo sentencia por los siguientes delitos:*

*(1) Asesinato, violación, incesto, sodomía o actos lascivos o impúdicos cuando la víctima fuera menor de catorce (14) años;*

*...."*. 4 L.P.R.A. § 1136a.

Como podemos ver, la citada norma está en conflicto con lo dispuesto en el Artículo VII del Reglamento Núm. 6041, el cual dispone que estarán excluidos para ser considerados para este privilegio las personas que estén cumpliendo por ciertos delitos allí enumerados, entre otros, el Asesinato *"en primer grado"*.

Cabe señalar que *"un reglamento promulgado para implementar la ejecución de una ley puede complementarla, pero no estar en conflicto con ésta"*, o sea, la función del mismo es darle contenido conforme la agencia lo interpreta. *Pérez v. Com. Rel. Trab. Serv. Púb.*, ___ D.P.R. ___ (2002), **2002 J.T.S. 139**, citando a *P.S.P. v. Com. Estatal de Elecciones*, 110 D.P.R. 400, 409 (1980). *"La preocupación evidenciada por esta norma va encaminada a examinar la cuestión sustantiva de si la regla está de acuerdo con las disposiciones estatutarias bajo las cuales se promulgó."* *Pérez v. Com. Rel. Trab. Serv. Púb.*, *supra*, citando a *Carrero v. Depto. de Educación*, 141 D.P.R. 830 (1996). Ante el claro conflicto surgido entre lo preceptuado en la Ley Núm. 49, *supra*, y lo dispuesto en el Reglamento Núm. 6041, se hace necesario examinar el historial legislativo de la Ley Núm. 49, *supra*, para determinar cuál fue la intención legislativa.

En la exposición de motivos de la ley se expresa que, al crear el Departamento de Corrección y Rehabilitación, la Asamblea Legislativa declaró como política pública que el sistema de corrección debe estar centrado en dos objetivos básicos, a saber: (1) proteger la sociedad y contribuir a la seguridad pública; y (2) rehabilitar a los confinados y a los transgresores en las instituciones y en los programas de la comunidad, tales como el Programa de Supervisión Electrónica, entre otros. Con esos objetivos en mente, la Asamblea Legislativa entendió que era necesario establecer, por ley, unos criterios básicos para los programas de desvío o tratamiento y rehabilitación creados y operados por la Administración de Corrección. Exposición de Motivos, Ley Núm. 49, *supra*.

Durante el debate de la medida llevado a cabo en el Senado el 30 de marzo de 1995, el Senador Charlie Rodríguez Colón expresó lo siguiente:

*"Nos parece que la manera en que este Proyecto se ha redactado, atiende las preocupaciones del señor gobernador y de otros sectores de la Rama Ejecutiva y nos parece que el mismo satisface la intención de este Legislador de establecer los criterios sobre los cuales puede operar el Administrador de Corrección al momento de aplicar o conceder los programas de desvío a los confinados en su sistema. Yo no creo que ninguna persona que le quite la vida a otro ser humano debe tener la oportunidad de desvío de estos programas porque se han dado casos donde le han concedido a un asesino convicto la oportunidad de salir en un programa de desvío con apenas haber cumplido cuatro o seis años de su condena, de una condena que normalmente en caso de asesinato en segundo grado puede llegar hasta los 35 ó 40 años."* (Énfasis nuestro). Diario de Sesiones, Senado, 30 de marzo de 1995, Núm. 27, pág. 17964.

Hasta el momento en que se aprobó la Ley Núm. 49, *supra*, la Administración de Corrección había tenido amplia discreción de permitir que personas convictas de delitos graves participaran en varios programas de desvío, incluyendo el Programa de Supervisión Electrónica. Esta medida tenía el propósito de establecer unos criterios que la Administración de Corrección tendría que tomar en consideración para conceder a los confinados el privilegio de participar en ciertos programas de desvío. Así lo hizo constar el Senador Rodríguez Colón durante el debate de la medida, al expresar:

*"Si realmente queremos resolver el problema de que desde el '89 el Administrador de Corrección ha tenido esa amplia discreción de dejar personas convictas de delitos graves tan malos a nuestra sociedad, como lo es el asesinado, como lo es la violación, como lo es el incesto, como es la sodomía o actos impúdicos contra menores de catorce (14) años.... Lo que procede es precisamente votarle a favor a esta medida.... **para establecer claramente que el Administrador de Corrección puede sí tener programa de desvío para atender el problema del hacinamiento como un mecanismo de rehabilitación, pero que no se le pueda conceder a personas que obviamente han hecho un mal tan grande a nuestra sociedad...."**.* (Énfasis nuestro). Diario de Sesiones, Senado, 30 de marzo de 1995, Núm. 27, pág. 17966.

Además, el Senador Rodríguez Colón aclaró más aún la intención legislativa al aprobar la Ley Núm. 49, *supra*, explicando las razones que lo motivaron a presentar este proyecto:

*"Este proyecto... la forma en que se convierte en realidad es cuando yo estoy en mi oficina y llega a visitarme una señora, a felicitarme porque yo había radicado un proyecto en torno a la Junta de Libertad Bajo Palabra... y ella me planteó la situación de que su hija y su sobrina fueron asesinadas por un individuo que a cada una de ellas les asestó sobre doce (12) puñaladas. Y de ese asesinato salió convicto ese individuo, le echaron treinta y siete (37) años por asesinato en segundo grado, que si hubiera ido a solicitar libertad bajo palabra habría tenido que cumplir por lo menos un mínimo que normalmente es la mitad de la sentencia, pero que utilizando este mecanismo de desvío, de discreción amplia que tiene el Administrador de Corrección, apenas cumplió seis (6) años y estaba caminando por nuestras calles con grillete electrónico. Y esa señora se bebía las lágrimas cuando me decía: '¿qué justicia es esa en Puerto Rico, donde a mi hija le quitaron la vida y a mi sobrina le quitaron la vida, y ahora el individuo con apenas haber cumplido seis (6) años, se encuentra ahora con grillete electrónico?' **Como si quitarle la vida a un ser humano no fuera un crimen tan horrendo, que por lo menos se le requirieran unos criterios, unos requisitos más exigentes.** Y fue provocada por esa visita de esta distinguida ciudadana puertorriqueña que me dio con investigar, y me horroricé compañeros, cuando vi la gran cantidad de situaciones similares que se habían dado en Puerto Rico...."*. (Énfasis nuestro). Diario de Sesiones, Senado, 30 de marzo de 1995, Núm. 27, pág. 17966.

A la luz del citado historial legislativo, forzoso es concluir que al aprobar la Ley Núm. 49, *supra*, el legislador tuvo la intención de excluir de los programas de desvío de la Administración de Corrección, incluyendo el Programa de Supervisión Electrónica, a toda persona convicta que estuviere cumpliendo una sentencia por, entre otros, el delito de asesinato en cualquiera de sus modalidades. De dicho historial legislativo claramente se desprende que, contrario a lo dispuesto en el Reglamento Núm. 6041, en ningún momento el legislador tuvo la intención de excluir de la aplicación de la ley a las personad convictas del delito de asesinato en segundo grado.

En *Asoc. Fcias. Com. v. Depto. de Salud*, ___ D.P.R. ___ (2002), **2002 J.T.S. 18**. *supra*, el Tribunal Supremo resolvió que *"las agencias tienen el deber de especificar, mediante reglamentación, los criterios esbozados de forma muy general en la legislación delegante, para así evitar una aplicación arbitraria e injusta, y proveer guías adecuadas para que las partes afectadas por las acciones administrativas estén debidamente informadas del estado de derecho vigente"*. Al promulgar el Reglamento Núm. 6041, la Administración de Corrección obvió los criterios específicamente esbozados en la Ley Núm. 49, *supra*.

No obstante lo dispuesto en el Reglamento Núm. 6041, la Administración de Corrección aplicó correctamente los criterios de la Ley Núm. 49, *supra*, al evaluar la solicitud del Sr. Robles en cuanto a que lo refirieran al Programa de Supervisión Electrónica y le notificó a éste que no era elegible para participar en dicho programa. En este caso, la Administración de Corrección y sus funcionarios no tenían un deber ministerial de evaluar, referir y hacer elegible al peticionario para su eventual consideración al programa de supervisión electrónica. Por lo tanto, no estaba disponible para el Sr. Robles el recurso de *mandamus*. Actuó correctamente el Tribunal de Primera Instancia al desestimar el recurso de *mandamus* presentado por el Sr. Robles.

### III

Por los fundamentos antes expuestos, resolvemos denegar el recurso solicitado.

Así lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General