# 2000 DTA 163

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL DE SAN JUAN**
**PANEL II**

ANIBAL ACEVEDO VILA
Demandante-Recurrido

v.

GUILLERMO SILVA JANER EN SU CAPACIDAD DE DIRECTOR EJECUTIVO DE LA
ADMINISTRACION DE SEGUROS DE SALUD DE PUERTO RICO
Demandado-Peticionario

Núm. KLCE-2000-00308

San Juan, Puerto Rico, a 21 de junio de 2000

Panel integrado por su Presidenta, la Juez Alfonso de Cumpiano,
el Juez Aponte Jiménez y la Juez Feliciano Acevedo

Feliciano Acevedo, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El Director Ejecutivo de la Administración de Seguros de Salud de Puerto Rico (ASES), Guillermo Silva Janer, compareció ante nos, mediante petición de *certiorari* y moción en auxilio de nuestra jurisdicción apelativa. Solicitó la revisión y revocación de la resolución del Tribunal de Primera Instancia, Sala Superior de San Juan, que declaró no ha lugar su moción para desestimar el auto de *mandamus* presentado por el Representante por Acumulación de la Cámara de Representantes del Estado Libre Asociado de Puerto Rico, Hon. Aníbal Acevedo Vilá, con el objeto de que se le ordenara al funcionario ejecutivo permitirle acceso a ciertos estudios sobre la calidad de los servicios médicos primarios que se ofrecen a los beneficiarios de la tarjeta de salud gubernamental. El peticionario cuestiona la procedencia del vehículo de carácter extraordinario y altamente privilegiado utilizado, así como la legitimación del recurrido para instar una controversia justiciable en el caso de autos. Por el incumplimiento del recurso incoado con los requisitos estatutarios y jurisprudenciales del *mandamus*, se revoca la resolución del foro de instancia. En su consecuencia, se declara con lugar la moción de desestimación radicada por la parte peticionaria.

Los hechos que originan la controversia ante nuestra consideración se remontan al 27 de abril de 1999. En esta fecha, de la oficina del representante Acevedo Vilá, portavoz de la minoría parlamentaria del Partido Popular Democrático en el cuerpo legislativo, se le dirigió una carta al Director Ejecutivo de ASES. Allí se le solicitó acceso a los informes preparados para la corporación pública por la firma de asesores externos Quality Improvement Professional Research Organization, Inc., (QIPRO). Los mismos versan acerca de la calidad y la efectividad de los servicios médicos primarios que reciben los usuarios de la Tarjeta de Salud como parte de la Reforma de Salud Gubernamental. En apoyo de la petición, se afirmó que se estaba realizando una investigación en torno a este tema. ■ Como respuesta a dicha solicitud, se le remitió copia de un documento titulado *"Análisis Comparativo de las Evaluaciones Llevadas a Cabo Por QIPRO en las Areas Noreste, Sureste, Noroeste, Este, Suroeste y las Regiones Norte y Central"*. ■ De acuerdo con el peticionario, este

escrito representa el *"compendio fiel y conciso"* de los estudios que QIPRO había realizado en las áreas y regiones en las que hasta entonces se había implantado la Reforma de Salud y *"constituye el documento público que se remite a la Legislatura y a todo ciudadano que así lo solicite."* ■

El 10 de mayo de 1999, el aquí recurrido, envió otra misiva al licenciado Silva Janer. En esta ocasión, le pidió que se le refirieran íntegramente las evaluaciones en las cuales se basó el análisis comparativo antes mencionado. Señaló que *"[l]a revisión del referido estudio es necesaria para realizar gestiones relacionadas con mi función legislativa"*. ■ Asimismo, hizo un recuento de las gestiones personales y escritas que había realizado infructuosamente su Asesor Legislativo para obtener acceso a las evaluaciones. Enfatizó que, a su juicio, el estudio era un *"documento público"*.

Mediante carta fechada diez días después, el Director Ejecutivo de ASES respondió en la negativa a la solicitud del legislador. ■ Aseveró allí que los datos públicos contenidos en las evaluaciones solicitadas ya se habían remitido a la oficina del representante por acumulación. Además, negó que el estudio *"como tal"* fuese un documento público. Añadió que *"toda la información considerada por ASES de carácter e interés público, ha quedado plasmada en el documento de Análisis Comparativo"*. ■ No obstante lo anterior, envió al recurrido copia de otro documento relacionado con las evaluaciones. De esta forma, le remitió, junto al anterior, el *"Análisis Comparativo del Nivel de Satisfacción de los Beneficiarios del Plan Nuevo de la Tarjeta de Salud en las Areas de Noreste, Sureste, Norte, Central, Noroeste, Este y Suroeste"*.

Insatisfecho, Acevedo Vilá solicitó, una vez más, el acceso a los estudios aludidos en una misiva del 2 de junio de 1999. ■ En esencia, contradijo la posición de Silva Janer en torno a la determinación de ASES de divulgar sólo aquella información contenida en las evaluaciones cuyo carácter o interés público así lo requiriera. Reseñó los supuestos en los cuales podría el gobierno reclamar con posibilidad de éxito la secretividad de cierta información y solicitó que se le indicara bajo cuál de éstos podían cobijarse los estudios. Dijo que de concluirse que ninguno de los mismos fuese aplicable a las evaluaciones, se le facilitaran lo antes posible. Basó su petición *"en el ejercicio de (sus) prerrogativas legislativas y como ciudadano con derecho a información pública"*. ■ Según se desprende del expediente ante nos, no hubo respuesta por parte del Director Ejecutivo de ASES.

Ante ello, Acevedo Vilá solicitó, mediante demanda jurada presentada el 26 de agosto de 1999, la expedición de un auto de *mandamus* contra Silva Janer. Requirió que se le ordenara la entrega de los informes o estudios realizados por QIPRO sobre la calidad de los servicios médicos primarios que se ofrecen a los beneficiarios de la tarjeta de salud del Gobierno del Estado Libre Asociado de Puerto Rico en las distintas áreas o regiones donde ha sido implantada la Reforma de Salud. ■

En síntesis, el demandante alegó que, al amparo del derecho constitucional a la libre expresión en su vertiente de libertad de acceso a la información pública, debía obtener los estudios aludidos. Sostuvo que a tenor con dicha garantía constitucional, todo funcionario público tiene el deber ministerial de divulgar los documentos públicos que estén bajo su custodia a los ciudadanos que así lo soliciten. Ello con limitadas excepciones no aplicables, según su criterio, al caso de autos.

Oportunamente, el demandado solicitó la desestimación del recurso. ■ En lo esencial, afirmó que Acevedo Vilá carecía de legitimación activa, tanto en su capacidad de ciudadano como en su carácter de legislador; que el recurso instado incumplía con los requisitos del *mandamus*; y que el documento solicitado era confidencial. Por su parte, el demandante se opuso a la desestimación solicitada mediante moción a tales efectos. ■ A su vez, el demandado refutó los argumentos de Acevedo Vilá en escrito titulado *"Réplica a Oposición a Solicitud de Desestimación"*. ■

Examinados los planteamientos de las partes, el tribunal *a quo* dictó resolución interlocutoria el 6 de marzo de 2000. ■ Allí denegó la desestimación de la acción. Resolvió que Acevedo Vilá tiene legitimación activa como ciudadano para presentar la acción. En cuanto a ello indicó:

*"El fundamento de su petición es el derecho que tiene todo ciudadano de tener acceso a documentación pública como parte de su derecho a la libertad de expresión, al libre flujo de ideas y a la libre discusión de los asuntos públicos. No estamos ante una reclamación privada de daños, sino ante una reclamación para que el Estado, en este caso ASES, cumpla con una obligación constitucional de acceso a la información de alto interés público -la calidad de los servicios médicos que se ofrecen a través de la Reforma de Salud. No tenemos duda que estamos ante una acción pública, por lo que Acevedo tiene legitimación activa como ciudadano para instar este recurso de mandamus."* ▉

Como consecuencia de lo anterior, el tribunal de instancia concluyó que *"se torna académico entrar a considerar si tiene legitimación como legislador"*. ▉

Determinó, además, que el recurso incoado cumplía con todos los requisitos del *mandamus*. Así, estimó que el demandante había alegado en forma clara y precisa: 1) que existe en la ley o en la Constitución, una disposición que impone un deber al demandado; 2) que este deber es de naturaleza ministerial; 3) que el demandado se niega a cumplir con dicho deber, luego de haber sido requerido extrajudicialmente; y 4) que no existe en ley otro remedio adecuado y eficaz. El tribunal estimó satisfecho este último criterio, a pesar de la existencia de una disposición reglamentaria de la Cámara de Representantes que establece el procedimiento que deben seguir los miembros de dicho cuerpo legislativo para tramitar, como resoluciones, sus peticiones de información a funcionarios y agencias gubernamentales. No consideró que ello constituyese un remedio adecuado y eficaz, pues *"no se trata de un procedimiento administrativo que una persona tiene que seguir para obtener acceso a información pública"*. ▉ Asimismo, agregó el foro de instancia:

*"No es la intención del demandante en este caso, obtener una resolución cameral ordenando a Silva entregar el estudio. Su intención es que se le permita a él observar dicho estudio. Resolvemos que para tal propósito, este es el remedio adecuado en ley."* ▉

En otro orden, en la resolución referida se señaló audiencia *"para disponer exclusivamente lo relativo al carácter confidencial de los documentos requeridos, llevar a cabo el balance de intereses que corresponde y realizar el análisis integral de las circunstancias que rodean la información requerida"*. La vista se pautó para el 29 de marzo de 2000.

En desacuerdo, el demandado, en esa fecha, presentó la petición de *certiorari* que nos ocupa. Así, se recurrió oportunamente de la resolución aludida, señalando la comisión de tres errores. ▉ Conjuntamente, se sometió una solicitud para que en auxilio de nuestra jurisdicción apelativa se ordenase la paralización de los trámites ante el foro de instancia.

En atención a la petición y a la moción en auxilio de jurisdicción, emitimos resolución. Expedimos el auto de *certiorari* solicitado, lo que conllevó la paralización de los procedimientos ante el tribunal recurrido. Acogimos el escrito de *certiorari* como el alegato de la parte peticionaria. Le ordenamos la presentación de un alegato suplementario sobre la legitimación activa del demandante recurrido en su capacidad de legislador para instar el recurso de *mandamus*. Ello dentro del término de veinte (20) días a partir de la notificación de la resolución. Concedimos ese mismo plazo al recurrido para que presentara su alegato. A tenor con la resolución, debía atender, tanto los errores señalados en la petición de *certiorari* como la cuestión referente a su standing como legislador para solicitar la orden de *mandamus* contra Silva Janer. Tras ciertos eventos procesales, ambas partes comparecieron en cumplimiento de lo ordenado.

Es menester señalar que Acevedo Vilá acudió ante nuestro Tribunal Supremo, el 6 de abril de 2000, mediante la presentación de los escritos *"Petición de Certificación"* y *"Moción Urgente Solicitando Orden en Auxilio de Jurisdicción"*. Solicitó la paralización de los procedimientos ante este Foro y la expedición de un auto de certificación para atender las cuestiones constitucionales sustanciales planteadas en el recurso. Ello, para, a su juicio, evitar que la reclamación se tornara académica por la celebración, entonces inminente, de la

vista pública en la cual la Comisión de Hacienda de la Cámara de Representantes consideraría el presupuesto recomendado de ASES para el próximo año fiscal. Adujo que el estudio objeto del recurso de *mandamus* era vital para su participación efectiva como legislador de minoría en dicha audiencia legislativa. El Tribunal Supremo dictó resolución el 7 de abril de 2000 en la cual declaró no ho lugar la petición de certificación aludida.

Evaluados los planteamientos de las partes, estamos en posición de resolver. Para ello, atenderemos y discutiremos separadamente dos de los errores levantados por Silva Janer en su escrito de *certiorari*.

Como hemos transcrito, en su primer señalamiento de error, el peticionario sostiene que incidió el tribunal *a quo* al determinar que Acevedo Vilá tiene legitimación activa como ciudadano para instar el recurso de *mandamus*. Veamos.

En primer lugar, es preciso retomar los linderos del ejercicio válido de la autoridad judicial. Es norma reiterada, tanto en nuestra jurisdicción, como en la federal, que para ello se requiere la existencia de un caso o controversia real. Al abordar este principio rector, en *Noriega v. Hernández Colón*, 135 D.P.R. 406 (1994), se expresó:

*"Esta limitación al poder judicial -ya sea por imperativo constitucional y/o jurisprudencial- surge de una doble realidad; a saber, que los tribunales sólo pueden decidir cuestiones presentadas en un contexto adversativo capaz de ser resueltas a través de un proceso judicial; y la restricción que surge de una división tripartita en un gobierno de forma republicana, diseñada para asegurar que la Rama Judicial no intervendrá en áreas sometidas al criterio de otras ramas de gobierno. Com. de la Mujer v. Srio. de Justicia, 109 D.P.R. 715 (1980); Flast v. Cohen, 392 U.S. 83 (1968); véase H. Padilla Martínez, El Poder Judicial en Puerto Rico: Su Estructura, Funciones y Limitaciones; 50 Rev. UPR 357, 435 (19 81)."*

Desde *E.L.A. v. Aguayo*, 80 D.P.R. 552, 558-559 (1958), se había señalado que esta autoridad judicial dimanaba *"del elemental principio de que los tribunales existen únicamente para resolver controversias genuinas surgidas entre partes opuestas que tienen un interés real en obtener un remedio que haya de afectar sus relaciones jurídicas"*.

Uno de los requisitos de la justiciabilidad de las controversias, es que las partes deben tener la capacidad jurídica para serlo. En función de este criterio indispensable, se ha desarrollado la doctrina de legitimación en causa o standing. Se refiere a *"[l]a capacidad de una parte para realizar con eficacia actos procesales como litigante y comparecer como demandante o demandado, o en representación de cualquiera de ellos"*. *Col. Opticos de P.R. v. Vani Visual Center*, 124 D.P.R. 559, 563 (1989).

La legitimación en causa se considera un instrumento de autorrestricción que los tribunales utilizan para *"delimitar su propia jurisdicción y no adentrarse en los dominios de otras ramas de gobierno y no lanzarse a resolver cuestiones hipotéticas o planteadas dentro de un contexto inadecuado"*. *Hernández Torres v. Hernández Colón*, 131 D.P.R. 593, 598 (1992).

De ordinario, para que se reconozca legitimación activa a un demandante, se exige demostrar el cumplimiento con los siguientes requisitos indispensables: 1) que éste ha sufrido un daño claro y palpable; 2) que el daño es real, inmediato y preciso, y no abstracto o hipotético; 3) que existe una conexión entre el daño sufrido y la causa de acción ejercitada; y 4) que la causa de acción surge bajo el palio de la Constitución o de una ley. *García Oyola v. Junta de Calidad Ambiental*, 142 D.P.R. ___ (1997), **97 J.T.S. 25**; *Asociación de Maestros v. Arsenio Torres*, 137 D.P.R. 528, (1994); *Hernández Torres v. Hernández Colón, supra*, pág. 599; *Hernández Agosto v. Romero Barceló*, 112 D.P.R. 407, 414 (1982); *Fundación Arqueológica v. Departamento de la Vivienda*, 109 D.P.R. 387, 392 (1980).

Nuestra jurisprudencia ha establecido que la función principal de este requisito, también conocido como acción legitimada, es *"asegurar al tribunal que el promovente de la acción es uno cuyo interés es de tal índole que, con toda probabilidad, habrá de proseguir su causa de acción vigorosamente y habrá de traer a la atención del tribunal las cuestiones en controversia"*. *Hernández Agosto v. Romero Barceló, supra,* a la pág. 413. Véanse, además, *Partido Popular Democrático v. Rosselló,* 139 D.P.R. ___(1995), **95 J.T.S. 165**; *Noriega v. Hernández Colón, supra; Hernández Torres v. Hernández Colón, supra.*

Tratándose de demandas instadas contra agencias y funcionarios gubernamentales, la doctrina de legitimación activa se interpreta amplia y liberalmente. De esta forma, no se le requiere a la persona afectada por la actuación gubernamental, probar que ha sufrido algún daño económico. Por lo contrario, se ha reconocido que el daño que da pie a la causa de acción puede haberse basado en *"consideraciones ambientales, recreativas, espirituales o aun simplemente estéticas"*. *García Oyola v. Junta de Calidad Ambiental, supra,* pág. 662.

La interpretación flexible de los requisitos de acción legitimada se ha dado en el contexto de reclamaciones referentes a los derechos ambientales, a la protección al consumidor y a la defensa de los intereses de los trabajadores agrupados en organizaciones gremiales. *Pacheco Fraticelli v. Cintrón Antonsanti,* 122 D.P.R. 229 (1988); *Solís v. Municipio de Caguas,* 120 D.P.R. 53 (1987); *Salas Soler v. Secretario de Justicia,* 102 D.P.R. 716 (1974); *Cerame Vivas v. Secretario de Salud,* 99 D.P.R. 45 (1970); *Asociación de Maestros v. Pérez, Gobernador, Int.,* 67 D.P.R. 848 (1947).

El Tribunal Supremo ha expresado que *"[e]sta nueva visión responde a un reconocimiento de que para cumplir con nuestra responsabilidad constitucional en esta época, debemos interpretar liberalmente los requisitos de legitimación activa de aquellos que acuden al foro judicial en auxilio de nuestra jurisdicción."* *Col. Opticos de P.R. v. Vani Visual Center, supra,* pág. 564. A renglón seguido, se añade allí que interpretar restrictivamente los criterios de capacidad jurídica aplicables a los promoventes de acciones, supondría negarle acceso a los tribunales a personas adversamente afectadas por actuaciones gubernamentales, o de otras entidades, con reclamaciones que ameritan la atención del foro judicial.

Se desprende de lo anterior que esta *"nueva visión"* no se circunscribe exclusivamente, como parece alegar el peticionario, a controversias sobre materias idénticas a aquéllas que ya han sido objeto específico de la flexibilización a la que hacemos referencia. Más bien, se trata de la interpretación amplia y liberal que, al tenor de los tiempos actuales, debe hacerse de los requisitos de legitimación activa para solicitar remedios judiciales.

En el caso de autos, a la luz de la tendencia jurisprudencial antes reseñada, el tribunal *a quo* estimó que el demandante, aquí recurrido, había demostrado cumplir con los requisitos de capacidad jurídica, en su carácter de ciudadano, para incoar el recurso de *mandamus.* Como hemos reseñado, en su análisis, el foro de instancia se apoyó principalmente en la naturaleza *"pública"* de la reclamación de Acevedo Vilá. La contrapuso a una acción privada de daños. Señaló que tratándose de una reclamación al Estado para que uno de sus funcionarios ejecutivos cumpliera con la obligación constitucional de proveer acceso a información *"de alto interés público",* el recurrido ostentaba legitimación activa. Por ello, entre otras razones, denegó la desestimación del recurso. En atención a lo anterior, a pesar de que el tribunal no llegó a pronunciarse de manera final sobre el carácter de los documentos requeridos, examinaremos brevemente el ordenamiento que rige este asunto.

Cuando, como en el caso de autos, un ciudadano solicita acceso a alegados documentos públicos, su petición está amparada en el derecho a la libertad de expresión garantizado por la Primera Enmienda de la Constitución de los Estados Unidos y por el Art. II, Sec. 4, de la Constitución del Estado Libre Asociado, (1 L. P.R.A.). Sobre ello en *Soto v. Secretario de Justicia,* 112 D.P.R. 477, 485 (1982), se aseveró lo siguiente:

*" ... [E]xiste una estrecha correspondencia entre el derecho a la libre expresión y a la libertad de información. La premisa es sencilla. Sin conocimiento de hechos no se puede juzgar; tampoco se puede exigir remedios judiciales a los agravios gubernamentales mediante los procedimientos judiciales o a través del*

*proceso de las urnas cada cuatro (4) años."*

A tenor con la dimensión constitucional que allí se le reconoció al derecho de todo ciudadano de tener acceso a información gubernamental, *"[e]l Estado, como depositario de las funciones que emanan de la soberanía del Pueblo, no puede negar caprichosamente y sin justificación aparente la información recopilada en su gestión pública".* ▮ De conformidad con ello, en ausencia de un apremiante interés público, no está en manos de las agencias gubernamentales, ni de sus funcionarios, decidir *"cuáles papeles y documentos resultantes de su gestión pública estarían fuera del escrutinio de quienes son, en esencia, la fuente misma de la soberanía".* ▮ Así, de ordinario, frente a la petición de un ciudadano, al estado le está vedado cubrir sus propias actuaciones con el manto de la secretividad.

Ello se reiteró recientemente en *Disidente v. Departamento de Estado*, 145 D.P.R. ___(1998), **98 J.T.S. 68**, pág. 1011. Expresó allí el Tribunal Supremo que al refrendar la dimensión constitucional del derecho de acceso e información de la prensa y el público en general, se evita que *"el gobierno maneje los asuntos públicos en secreto y disminuya el flujo constante de información al público en menoscabo de la participación en los asuntos que le conciernen."*

Por vía de excepción, sin embargo, bajo esta misma normativa, se le reconoce al gobierno la facultad para reclamar, con posibilidad de éxito, la secretividad de la información bajo su poder o custodia en determinadas circunstancias. Las excepciones que permiten sostener la secretividad de ciertos documentos públicos, se basan en que, como otros derechos de rango constitucional, el derecho de acceso a información no es absoluto ni irrestricto. En las circunstancias apropiadas, debe ceder frente a consideraciones de imperativo interés público como las anteriormente reseñadas. *Soto, supra*, págs. 493-494; *Bonilla Medina v. P.N.P.*, 140 D.P.R.___, **96 J. T.S. 33**; *Velázquez v. A.M.A.*, 131 D.P.R. 562, (1992).

De la resolución recurrida, se desprende que el tribunal *a quo* examinó conjunta e integralmente la normativa anterior a la luz de los requisitos particulares de legitimación activa para incoar el recurso de *mandamus*.

De ordinario, cuando se solicita la expedición de un auto de *mandamus*, no existen problemas de standing. Ello, en razón de que la acción sólo la puede instar la parte verdaderamente interesada en los actos cuya ejecución se trata de obtener en virtud del procedimiento. ▮ Véase, D. Rivé Rivera, *"El Mandamus en Puerto Rico"*, 46 Rev. Col. Abog, 15, 32 (1985). Sin embargo, nos dice el autor, que se pueden suscitar dificultades al determinar si existe capacidad jurídica para incoar el recurso, *"en los casos de las llamadas acciones públicas, es decir, aquellas en que el peticionario recurre al tribunal en protección, no de sus intereses privados, sino de una política pública."* De ahí que en *Asociación de Maestros v. Pérez, Gobernador*, 67 D.P.R. 849, 851 (1947), se haya trazado una distinción respecto a la legitimación activa en acciones privadas y en acciones públicas. Se expresó allí lo siguiente:

*"Tratándose de cuestiones de interés público, sostiene la mayoría de las autoridades que interpretan preceptos similares al nuestro que cuando la cuestión envuelta es de interés público y el mandamus tiene por objeto conseguir la ejecución de un deber público, el pueblo es considerado como la parte especialmente interesada y el demandante no necesita probar que tiene interés especial en el resultado del caso. Basta demostrar que es un ciudadano y como tal está interesado en la ejecución y protección del derecho público."*

Posteriormente, y en diversidad de situaciones, se ha reiterado esta doctrina de legitimación activa que Rivé Rivera clasifica como *"generosa"*. Ello, en casos tales como *Cerame Vivas v. Secretario de Salud, supra*, y *Fundación Arqueológica v. Departamento de la Vivienda, supra*, entre otros. Esta es la normativa aún vigente.

A nuestro juicio, a tenor con la norma imperante en esta jurisdicción, fue correcta la determinación del foro recurrido de reconocerle capacidad jurídica a Acevedo Vilá en su carácter de ciudadano para incoar el recurso

443

de *mandamus*. No se cometió el primer error señalado.

El peticionario arguye, además, que incidió el foro de instancia *"al determinar que el Representante Acevedo Vilá tiene otro remedio adecuado en ley para obtener lo que aquí solicita y aún así no desestimar este recurso extraordinario"*. En su criterio, ello amerita la revocación de la resolución recurrida. Tiene razón. Veamos.

El Artículo 649 del Código de Enjuiciamiento Civil define el *mandamus* según citamos a continuación:

*"[E]s un auto altamente privilegiado dictado por el Tribunal Supremo de Puerto Rico, o por el Tribunal Superior de Puerto Rico, a nombre del Estado Libre Asociado de Puerto Rico, y dirigido a alguna persona o personas naturales, a una corporación, o a un tribunal judicial de inferior categoría dentro de su jurisdicción, requiriéndoles para el cumplimiento de algún acto que en dicho auto se exprese y que esté dentro de sus atribuciones o deberes. Dicho auto no confiere nueva autoridad y la parte a quien obliga debe tener la facultad de poder cumplirlo."* ■

Como se desprende de la disposición precitada, este recurso extraordinario *"está concebido para obligar a cualquier persona, corporación, junta o tribunal inferior, a cumplir un acto que la ley particularmente le ordena como un deber resultante de un empleo, cargo, o función pública, cuando ese deber no admite discreción en su ejercicio, sino que es ministerial."* D. Rivé Rivera, *supra*, pág. 19; *Noriega v. Hernández Colón*, 135 D.P.R. 406 (1994); *Espina v. Calderón*, 75 D.P.R. 76 (1953). Un deber ministerial es aquel impuesto por ley que no permite discreción alguna en su ejercicio, sino que es mandatorio o imperativo. *Noriega. ante; Alvarez de Choudens v. Tribunal Superior*, 103 D.P.R. 235, 242, (1974); *Partido Popular v. Junta de Elecciones*, 62 D.P.R. 745, 748 (1944); *Great American Indemnity v. Gobierno de la Capital*, 59 D.P.R. 911, 913 (1941); *Pueblo v. La Costa*, 59 D.P.R. 179 (1941).

En el caso de autos, es cierto que, como sostiene el peticionario, en la Ley Núm. 72 del 7 de septiembre de 1993 (24 L.P.R.A. se. 7001 *et. seq.*), conocida como Ley de la Administración de Seguros de Salud de Puerto Rico, no se le impone un deber ministerial que lo obligue a permitir acceso a los estudios solicitados. Sin embargo, se ha resuelto que no es necesario que el deber ministerial surja expresamente de la disposición específicamente aplicable para que proceda el recurso. De acuerdo con Hernández Agosto, *supra*, sostener lo contrario representaría una reducción inaceptable de la función exclusivamente judicial de interpretar la Constitución y las leyes. Determinar si el deber ministerial surge o no de las disposiciones aplicables, no está, por tanto, sujeto sólo a la mera lectura de la letra de la ley.

Sin embargo, no son éstos los únicos requisitos con los que deberá cumplirse para que proceda la expedición del *mandamus*. Como requisito final para que proceda, no puede existir en ley otro remedio. Según lo ordenado en el Artículo 651 del Código de Enjuiciamiento Civil, (21 L.P.R.A. 3423), *"[e]ste auto no podrá dictarse en los casos en que se encuentre un recurso adecuado y eficaz en el curso ordinario de la ley"*. Con sujeción a este mandato, reiteradamente se ha resuelto que no procederá la expedición del recurso cuando el peticionario no haya agotado los remedios disponibles en ley para resolver el caso que plantea en su solicitud de *mandamus*. *Alvarez de Choudens v. Tribunal Superior*, *supra*. Véanse también *Espina v. Calderón, supra; Dávila v. Superintendente de Elecciones*, 82 D.P.R. 264 (1960); *El Ancora v. Brenes*, 39 D.P.R. 798 (1929); *Quiñones v. Foote*, 23 D.P.R. 351 *(1916); Meléndez v. Registrador*, 15 D.P.R. 658 (1909); *Palmer v. Guerra*, 9 D.P.R. 555 (1905); y *Giménez v. Corte*, 9 D.P.R. 296 (1905).

De igual forma, se ha resuelto que el objeto de este recurso extraordinario no es reemplazar remedios legales, sino suplir la falta de ellos. *Colón v. Comisión de la Policía Insular*, 72 D.P.R. 892 (1951); *Pueblo v. Arrillaga*, 30 D.P.R. 952 (1922). En los casos donde se ha planteado el requisito de agotamiento del cauce administrativo antes de acudir al *mandamus*, se ha resuelto que *"[no] basta ... con que los remedios administrativos sean lentos para que se justifique la preterición del requisito de agotamiento."* *Guadalupe v.*

*Saldaña*, 133 D.P.R. 42, 50 (1993).

Precisamente, en *Guadalupe v. Saldaña, supra*, al amparo de la doctrina del agotamiento de remedios administrativos, se revocó la determinación del foro de instancia y se desestimó la solicitud de un auto de *mandamus* contra el Presidente de la Universidad de Puerto Rico. Allí el demandante-recurrido, estudiante del Recinto de Río Piedras de la UPR y representante estudiantil ante su Junta Universitaria, había solicitado infructuosamente, en múltiples ocasiones, al funcionario referido que le supliera cierta documentación referente a la situación fiscal de la institución. Ante su negativa, instó el recurso para ordenarle la entrega de los documentos aludidos. En revisión, el Tribunal Supremo resolvió que no procedía la acción instada, en vista de que, entre otras razones, el recurrido tenía a su alcance un remedio administrativo ante al Consejo de Educación Superior que no había agotado, previo a acudir a la vía judicial. Según lo allí resuelto, a pesar del planteamiento constitucional del derecho de acceso a información pública, el recurrido no podía preterir el cauce administrativo, pues éste era *"un recurso adecuado y eficaz en el curso ordinario de la ley"*. Nos parece evidente que, por razones análogas a las vertidas en *Guadalupe, ante*, es improcedente el recurso incoado por Acevedo Vilá.

El Reglamento de la Cámara de Representantes del Estado Libre Asociado de Puerto Rico, aprobado en virtud de la R. de la C. 52 de 17 de enero de 1997, rige al recurrido en su capacidad de Representante por Acumulación en este cuerpo legislativo. El Reglamento dispone en su Regla 17, Sección 17.2, lo siguiente:

*"La petición de cualquier Representante, a los fines de solicitar información a cualesquiera de las Ramas del Gobierno, sus dependencias, subdivisiones u oficinas, así como los funcionarios o empleados de éstas, a través de la Cámara, deberá radicarse por escrito en la Secretaría, como Resolución de la Cámara. Cualquier Representante podrá solicitar una petición como Resolución. Estas serán referidas a la Comisión de Asuntos Internos.*

*De ser aprobada por la Cámara, el Secretario será responsable de dar seguimiento al cumplimiento de la misma. De no cumplirse con la entrega de la información requerida en un período razonable, el Secretario notificará a la Cámara para que ésta adopte las medidas que correspondan para compeler al cumplimiento de lo ordenado en la Resolución de petición. A esos efectos, la Cámara podrá, inclusive, acudir al Tribunal, conforme a las disposiciones de ley aplicables."*

Como se desprende de la disposición transcrita, allí se provee específicamente un remedio en ley para resolver lo planteado por Acevedo Vilá en su solicitud de *mandamus*. Se permite a cualquier representante solicitar una resolución cameral a los fines de requerir información a cualesquiera de las ramas gubernamentales, sus dependencias, subdivisiones u oficinas, como lo es la Administración de Seguros de Salud. A tenor con ello, en sus gestiones para obtener acceso a los estudios realizados por QIPRO, el demandante-recurrido pudo haber tramitado su petición a través de la Cámara de Representantes. En su capacidad de legislador, la cual no puede divorciarse de la de ciudadano para acudir a ese mecanismo disponible, tenía acceso a un remedio en ley a su alcance.

Pero aún más. En ningún lugar se alega por el recurrido que acudir al procedimiento establecido en el Reglamento de la Cámara ha de causarle un daño inminente, material, sustancial y no teórico o especulativo. Lo más que se acerca a lo anterior es la alegación que ante nos formula en el sentido de que su reclamación *"podría tornarse académica y evadir la revisión judicial"* por cuanto *"la Sesión Legislativa termina el próximo 30 de junio de 2000."*

Lo que ocurre es que el recurrido comenzó sus gestiones para obtener la documentación requerida desde mayo de 1999. En agosto de ese año acudió ante el foro de instancia. Ciertamente, de haber actuado conforme la reglamentación aludida, ya hubiese tenido a su alcance y disponible, o la información que interesa, o el requisito exigido para acudir al *mandamus*. De hecho, surge de las alegaciones incluidas en su demanda que la solicitud de documentación la formula cuando estaba realizando *"una investigación como legislador sobre los servicios que se ofrecen a los participantes de la Reforma de Salud." Id.*, página 69, apéndice del recurso de revisión.

Asimismo, tampoco levantó ante el Tribunal de Primera Instancia que el remedio provisto en el Reglamento de la Cámara constituya una gestión inútil, inefectiva y que no le ofrece un remedio adecuado, ni que su posposición conlleve un daño irreparable. Sobre ese particular, no podemos tomar conocimiento judicial. Por el contrario, se limitó a discutir su derecho constitucional a obtener la información requerida y el *"ejercicio efectivo de sus prerrogativas legislativas de informar e investigar." Id;* página 73, recurso de revisión.

De conformidad con lo anterior, a juicio nuestro, el recurrido debió agotar el recurso que tenía a su disposición en virtud del Reglamento de la Cámara antes de instar la acción. Al menos, debió intentarlo. No lo hizo. Ello lo privó de acudir al foro judicial con su reclamo utilizando el recurso extraordinario del *mandamus*.

Ante el incumplimiento en el caso de marras con el requisito indispensable que exige agotar todos los remedios en ley antes de incoar un *mandamus*, resulta ineludible concluir que procede su desestimación.

En vista de la conclusión a la que hemos llegado, es innecesario discutir el señalamiento de error referente a la legitimación activa como legislador de Acevedo Vilá.

Por los fundamentos que anteceden, se revoca la resolución recurrida y, en su lugar, se declara con lugar la moción de desestimación presentada por el recurrente.

La Juez Alfonso de Cumpiano disiente en voto escrito.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Notifíquese inmediatamente por telefax y por la vía ordinaria.

Aida Ileana Oquendo Graulau
Secretaria General

## VOTO DISIDENTE DE LA JUEZ DE APELACIONES
## SRA. ALFONSO DE CUMPIANO – 2000 DTA 163

San Juan, Puerto Rico, a 21 de junio de 2000

Disiento de la sentencia de la mayoría del Panel en cuanto resuelve que no procede el recurso de *mandamus* instado por el Rep. Aníbal Acevedo Vilá para obtener información en poder del Estado, porque debió agotar el remedio que tenía a su disposición en virtud del Reglamento de la Cámara de Representantes. Entiendo que el mecanismo dispuesto en dicho Reglamento para que la Cámara de Representantes solicite información de las agencias, no limita la legitimación activa del representante Acevedo Vilá para ejercer su derecho constitucional de acceso a información pública.

Los hechos que enmarcan la controversia están debidamente expuestos en la sentencia. En síntesis, el representante Acevedo Vilá presentó solicitud de *mandamus* para que se ordenara al Director Ejecutivo de la Administración de Seguros de Salud de Puerto Rico (ASES) que le permita acceso a determinados estudios o informes relacionados con la reforma de salud. ASES solicitó la desestimación del recurso, alegando ausencia de legitimación activa del representante Acevedo Vilá en su carácter de ciudadano y en su carácter de legislador, incumplimiento con los requisitos del *mandamus* y confidencialidad de los documentos. En fundamentada resolución, el tribunal recurrido denegó la moción de desestimación y determinó que el representante tiene legitimación activa como ciudadano y que se cumplían con los requisitos del *mandamus*. Señaló vista para dilucidar lo referente al carácter confidencial de los documentos requeridos. ASES acudió a este Tribunal en recurso de *certiorari*, bajo los planteamientos de ausencia de legitimación activa e incumplimiento con los

requisitos de *mandamus*. Señaló que el tribunal erró al no resolver la controversia sobre legitimación activa en el carácter de legislador del representante Acevedo Vilá. Expedimos el recurso para la consideración más detenida de dichos planteamientos.

En la sentencia, la mayoría del Panel resuelve que el representante Acevedo Vilá tiene legitimación activa o capacidad jurídica en su carácter de ciudadano para incoar el recurso de *mandamus*. Reconoce el derecho constitucional de acceso a información gubernamental, sujeto a las consideraciones de imperativo interés público dispuestas jurisprudencialmente. Señala que, salvo por uno, se cumplen en este caso los criterios para la expedición del recurso de *mandamus*, a saber: que existe en ley o en la Constitución una disposición que impone un deber al demandado; que éste es de naturaleza ministerial; que el demandado se niega a cumplir dicho deber después de haber sido requerido extrajudicialmente. Estoy de acuerdo con lo resuelto en la sentencia en lo previamente señalado, por lo que es innecesario reproducir el derecho que sustenta esos principios, reconocidos también en la resolución recurrida.

Luego de considerar los planteamientos de las partes que requerimos discutieran ante este foro, estimo que el representante Acevedo Vilá tiene también legitimación activa para instar el recurso de *mandamus*, en su carácter de legislador, para vindicar las prerrogativas y funciones constitucionales de investigar y fiscalizar la gestión pública. El desarrollo jurisprudencial de ese reconocimiento, respecto a acciones judiciales instadas por legisladores, cubre diversas y variadas situaciones. *Fas Alzamora v. Rosselló González,* 150 D.P.R. (2000), **2000 J.T.S. 74**, pág. 1036; *Noriega v. Hernández Colón,* 135 D.P.R. 406 (1994); *Hernández Torres v. Hernández Colón,* 131 D.P.R. 593 (1992); *Hernández Torres v. Gobernador,* 129 D.P.R. 678 (1991); *Nogueras v. Hernández Colón,* 127 D.P.R. 638 (1991); *Noriega v. Hernández Colón,* 126 D.P.R. 42 (1990); *Noriega v. Gobernador,* 122 D.P.R. 650 (1988); *Silva v. Hernández Agosto,* 118 D.P.R. 45 (1986); *Peña Clos v. Cartagena,* 114 D.P.R. 576 (1983); *Hernández Agosto v. Romero Barceló,* 112 D.P.R. 407 (1982); *Santa Aponte v. Srio. del Senado,* 105 D.P.R. 750 (1977). Véase la discusión en las diversas opiniones sobre este tema en la resolución en reconsideración publicada. *Acevedo Vilá y otros v. Corrada del Río,* 138 D.P.R. 80 (1995).

Sin embargo, no estoy de acuerdo y disiento de la razón por la cual se revoca la resolución del tribunal de instancia. Se ampara la mayoría en que el representante Acevedo Vilá tenía acceso a un remedio en ley, que debió agotar, por lo que no cumplió con el requisito del *mandamus*, consistente en que no existe en ley otro recurso adecuado y eficaz. Resuelve que la Regla 17, sección 17.2 del Reglamento de la Cámara de Representantes, *"provee específicamente un remedio en ley para resolver lo planteado por Acevedo Vilá en su solicitud de mandamus"*. Razona que en su capacidad de legislador, *"la cual no puede divorciarse de la de ciudadano"*, tenía acceso a ese remedio en ley, disponible y a su alcance, y que el representante Acevedo Vilá debió agotar el recurso que provee el Reglamento de la Cámara antes de instar la acción de *mandamus*. Como no lo hizo, determina que procede su desestimación.

No comparto el razonamiento, ni la decisión de la mayoría respecto al incumplimiento del requisito en cuestión, por los siguientes fundamentos.

Dispone el artículo 651 del Código de Enjuiciamiento Civil que el auto de *mandamus*, *"no podrá dictarse en los casos en que se encuentre un recurso adecuado y eficaz en el curso ordinario de la ley"*. 32 L.P.R.A. sec. 3423.

El Tribunal Supremo de Puerto Rico no ha definido específicamente los elementos que configuran *"un recurso adecuado y eficaz"* bajo la ley, a la luz del artículo 651, *supra*. Dependiendo de las circunstancias de los casos particulares, ha determinado si se cumple o no con ese requisito. Ni los casos que se citan en la sentencia, ni los que han considerado la procedencia del auto de *mandamus*, contemplan un mecanismo como el provisto a los legisladores por el Reglamento de la Cámara como impedimento para instar un recurso de *mandamus*.

Sí se ha dispuesto por nuestro Tribunal Supremo, en lo que nos concierne, que el objetivo del auto no es reemplazar remedios legales, sino suplir la falta de ellos. *Hernández Agosto v. Romero Barceló, supra*. También

que cuando el peticionario tiene a su disposición el recurso de apelación, no procede el *mandamus*. *Rodríguez v. Corte*, 60 D.P.R. 919 (1942); *Peña v Flores*, 58 D.P.R. 772 (1941). Otra razón que ha impedido que se otorgue el recurso de *mandamus*, es el no haberse agotado los remedios que una agencia u organismo administrativo brinde al peticionario. *Guadalupe Pérez v. Saldaña*, 133 D.P.R. 42, 49-51 (1993).

Por su relevancia y tangencia con la decisión en este caso, que requiere el previo agotamiento de un remedio, conviene exponer los principios que gobiernan la doctrina de agotamiento de remedios administrativos. Esta requiere que el que desee obtener un remedio en una agencia, utilice las vías administrativas disponibles antes de recurrir al tribunal. Por tanto, la revisión judicial de la decisión administrativa no está disponible hasta que la parte afectada utilice todos los procedimientos correctivos ofrecidos por el proceso administrativo. *Colón Ventura v. Hon. Justo Méndez y otros*, 130 D.P.R. 433, 443 (1992).

Los fundamentos o razones que sirven de apoyo a la doctrina son, en síntesis, permitir a la agencia desarrollar un historial completo, ejercer el conocimiento especializado de sus funcionarios, aplicar uniformemente sus poderes de ley, rectificar oportunamente sus errores, reconsiderar el alcance de sus pronunciamientos. Además, el agotamiento de remedios administrativos facilita la revisión judicial y libera a los tribunales de asuntos que pueden ser resueltos administrativamente. D. Fernández Quiñones, *Derecho Uniforme y Ley Uniforme de Procedimiento Administrativo*, Editorial Forum, 1993, págs. 448-449.

Como corolario de la doctrina, está la norma de que una parte sólo puede plantear en la revisión judicial las controversias que fueron presentadas ante la agencia, puesto que dejar de presentarlas violenta la doctrina. *Garaje Rubén, Inc. v. Tribunal Superior*, 101 D.P.R. 236 (1975); *Mendoza v. Junta de Salario Mínimo*, 74 D.P.R. 742 (1953) y otros.

Su codificación está contemplada en la sección 4.3 de la Ley de Procedimiento Administrativo Uniforme (L. P.A.U.) que establece las circunstancias en las cuales el tribunal podrá relevar a una parte de agotar los remedios administrativos. Entre otras, éstas consisten en: que el remedio es inadecuado, el agotamiento resulta en un daño irreparable para el promovente, y en el balance de intereses, no se justifica agotar dichos remedios cuando se alegue la violación a un derecho constitucional o sea inútil agotar remedios administrativos por dilación excesiva en los procedimientos o cuando sea un asunto estrictamente de derecho. 3 L.P.R.A. sec. 2173; *Escalona Vicenty v. Com. Estatal de Elecciones*, 115 D.P.R. 529 (1984); *González Saldaña v. Tribunal Superior*, 92 D.P.R. 477 (1965).

La aplicación del principio de agotamiento de remedios, como remedio adecuado que limita la expedición del *mandamus*, ha sido considerada por estudiosos de la materia. Se ha expresado que para que opere tal aplicación, se requiere que el recurso administrativo sea claro, adecuado y rápido, porque de lo contrario, está en orden el uso por los tribunales del *mandamus* para hacer valer el derecho. La norma no posee inflexibilidad a tal grado que lleve a la frustración de un derecho o a la negación de un remedio. D. Rivé Rivera, *Recursos Extraordinarios*, 2,1 Ed., Univ. Interamericana de P.R., Facultad de Derecho, San Juan, 1996, pág. 115 y casos allí citados.

Resultan ilustrativos los comentarios respecto a lo resuelto por el Tribunal Supremo en el caso de *Guadalupe Pérez v. Saldaña, supra*, invocado en la sentencia de la mayoría del Panel. En un análisis del requerimiento de agotamiento de remedios administrativos en ese caso, antes de que se instara un *mandamus* en solicitud de documentos públicos, se expuso lo siguiente:

*"El Tribunal Supremo revocó al tribunal de instancia. Ordenó que se agotaran los remedios administrativos. Destacó que no existía una violación a un derecho constitucional ni una situación que justificara la aplicación de la excepción a la doctrina del agotamiento de los remedios. Por lo relatado, resulta evidente que esta es la situación típica donde no es necesario agotar remedio alguno. Este es el caso donde se solicitan documentos públicos. Por consiguiente, el examen de la cuestión tiene que llevarse a cabo a la luz de las normas establecidas por el propio Tribunal para la solicitud de documentos públicos. Requerir el agotamiento de remedios, equivale a conferirle a la Universidad la facultad de determinar los documentos que puede suministrar cuando de otra*

*manera, por ser públicos, está obligada a divulgarlos. El remedio alegadamente adecuado no tiene ese alcance. Para suministrar un documento público no hace falta permiso administrativo alguno. Este caso, al igual que Mercado Vega v. U.P.R., reitera la perversión de la doctrina y la imposibilidad existente de aplicarla correctamente."*

D. Fernández Quiñones, *ob cit.,* pág. 463.

Es, por tanto, cuestionable que se requiera el agotamiento de remedios cuando se vindica un derecho sustancial reconocido por la Constitución, como es el de acceso a documentos públicos. La violación a un derecho constitucional sustancial es precisamente una de las circunstancias que se reconoce por ley como razón para relevar a un peticionario de tal agotamiento. Sección 4.3 de la L.P.A.U., *supra.*

El *mandamus* es un remedio extraordinario proveniente del *Common Law.* Por tanto, a manera ilustrativa, examinamos someramente el compendio doctrinario resultante de lo resuelto por casos de jurisdicciones estadounidenses, señalando guías precisas respecto al requisito de que no existe un remedio adecuado en ley para que proceda el *mandamus.* Se ha resuelto que para que se deniegue el *mandamus,* el otro remedio debe ser, no tan sólo adecuado en el sentido general de la palabra, sino, además, específico y apropiado a las circunstancias del caso particular. El otro remedio debe conceder lo reclamado y hacer valer el deber ministerial en cuestión. Debe ser uno al que el reclamante pueda recurrir en todo momento, a su opción, libremente, sin cortapisas y que esté disponible contra la parte de la que se solicita ejecute un deber. El remedio en ley no es adecuado a menos que responda a las necesidades y al derecho del reclamante bajo las circunstancias del caso, logre el fin pretendido y efectivamente obligue a la ejecución del deber. Debe ser tan conveniente, completo, beneficioso, efectivo como el *mandamus* y lo suficientemente rápido para prevenir cualquier daño material. Si el remedio de ley no es exclusivo, no precluye el *mandamus.* Véanse casos federales y estatales a esos efectos citados en 52 Am Jur 2d, *mandamus,* secs. 46-50.

A la luz de las normas jurisprudenciales de nuestro más alto foro y de las guías desarrolladas consideradas en otras jurisdicciones, veamos el remedio que la sentencia determina impide al representante Acevedo Vilá acudir al tribunal en recurso de *mandamus.* La disposición del Reglamento de la Cámara de Representantes en que se basa la sentencia, dispone como sigue:

*"Sección 17.2 Petición Tramitada como Resolución.*

*La petición de cualquier Representante a los fines de solicitar información a cualesquiera de las Ramas del Gobierno, sus dependencias, subdivisiones u oficinas, así como a los funcionarios o empleados de éstas, a través de la Cámara, deberá radicarse por escrito en la Secretaría como Resolución de la Cámara. Cualquier Representante podrá presentar una petición como Resolución. Estas serán referidas a la Comisión de Asuntos Internos.*

*De ser aprobada por la Cámara, el Secretario será responsable de dar seguimiento al cumplimiento de la misma. De no cumplirse con la entrega de la información requerida en un período razonable, el Secretario notificará a la Cámara para que ésta adopte las medidas que correspondan para compeler al cumplimiento de lo ordenado en la Resolución de petición. A esos efectos, la Cámara podrá, inclusive, acudir al Tribunal, conforme a las disposiciones de ley aplicables."*

Como surge de su lenguaje, la citada sección reglamentaria dispone el procedimiento que un representante deberá seguir para solicitar información de alguna agencia gubernamental *"a través de la Cámara".* A tales fines, podrá presentar una petición como resolución ante la Secretaría que se referirá a la Comisión de Asuntos Internos. Esta podrá ser aprobada o no por la Cámara. De ser aprobada, el Secretario dará seguimiento a su cumplimiento. Si transcurre un período razonable sin que se entregue la información, el Secretario notificará a la Cámara. Esta adoptará las medidas que correspondan, incluyendo el acudir al tribunal. Es claro que la disposición es de naturaleza potestativa, no contiene lenguaje exclusivo o que requiera recurrir en primera instancia al

procedimiento legislativo allí dispuesto, antes de acudir al tribunal. Tampoco contiene término dentro del cual la Cámara deberá actuar o en el que deberá la agencia cumplir el requerimiento de información. Es la Cámara y no el representante que presentó la resolución, quien determinará cuándo y cuáles medidas tomará, si alguna, para obligar a la agencia a suplir la información. Y finalmente, es a la Cámara de Representantes, no al legislador, a quien la disposición reconoce la opción de acudir al tribunal ante un incumplimiento de la agencia en suplir la información.

El requerimiento del agotamiento del remedio bajo la referida disposición reglamentaria, es claramente inaplicable a las circunstancias de este caso. No se dan en éste, ninguno de los fundamentos previamente expuestos en que se ampara la doctrina del agotamiento para que un peticionario reclame sus derechos ante la agencia (en este caso ante la Cámara), previo a acudir al tribunal. Por tanto, lo resuelto por el Tribunal Supremo en *Guadalupe Pérez v. Saldaña, supra,* y otros casos análogos, no provee base para impedir que el representante Acevedo Vilá presente el *mandamus.*

Tampoco existe un recurso apelativo judicial reconocido al representante Acevedo Vilá para cuestionar la negativa de ASES en proveer la información solicitada.

Nos resta examinar si el procedimiento legislativo reglamentario es limitante para la expedición del *mandamus* solicitado por el representante Acevedo Vilá por ser *"un remedio en ley"* que cumple con lo establecido en el artículo 651 de Código de Enjuiciamiento Civil, *supra,* y con las guías interpretativas sobre su alcance que hemos reseñado.

Conforme lo antes expresado, lo dispuesto en la sección 17.2 del Reglamento de la Cámara no es un medio exclusivo, ni obligatorio. No goza de las características efectivas del *mandamus,* ni reconoce la legitimación activa del representante Acevedo Vilá para obtener información pública. Esa disposición no tiene el alcance de limitar la prerrogativa legislativa de un representante de efectuar investigaciones sobre los asuntos públicos de manera independiente del cuerpo legislativo. Es un medio para que el representante solicite de la Cámara que, por su conducto, se solicite información gubernamental.

El tribunal recurrido, la mayoría del Panel, y la juez suscribiente, coinciden en la legitimación activa del representante Acevedo Vilá para instar el *mandamus* en requerimiento de información pública. Si tiene legitimación activa, no puede ésta quedar supeditada a la voluntad de la Cámara de Representantes.

Las circunstancias particulares del caso bajo consideración, hacen insostenible la decisión de que el remedio legislativo sea el recurso adecuado y eficaz a que se refiere el artículo 651, *supra.* Trata este caso de un legislador de minoría, a quien se le ha negado información de una agencia gubernamental, ASES, en torno a la reforma de salud. Solicitó la información para ejercer sus prerrogativas legislativas y como ciudadano con derecho a información pública. El remedio en ley que expresa la sentencia, le está disponible en sustitución del *mandamus*; consiste en un procedimiento legislativo reglamentario mediante el cual el representante Acevedo Vilá tendría que acudir mediante una petición de resolución a la Cámara de Representantes, para que ésta apruebe la resolución solicitando de ASES que suministre la información sobre los hallazgos de la reforma de salud que interesa dicho representante para ejercer sus prerrogativas legislativas de fiscalizar, investigar y participar informadamente en el proceso legislativo. Ese requerimiento, no sólo derrota la legitimación activa reconocida al representante Acevedo Vilá, sino que ignora los requisitos del *mandamus* que se han entendido se cumplen en este caso, a saber: el deber del funcionario enmarcado en la Constitución de proveer información pública, deber de naturaleza ministerial, el cual ha sido requerido y negado. Por otra parte, el remedio legislativo es para solicitar información por la Cámara, no para compeler al cumplimiento de un deber, como es el propósito del *mandamus.*

En conclusión, en atención a su texto, naturaleza y alcance, el mecanismo de la sección 17.6 del Reglamento de la Cámara de Representantes no es *"el recurso adecuado y eficaz en el curso ordinario de la ley"* que limita la expedición del *mandamus.* No puede de manera alguna cerrar la vía judicial al representante Acevedo Vilá para instar este recurso y hacer valer su derecho constitucional de acceso a información pública, como ciudadano y

como legislador.

En virtud de todo lo anterior, no erró el tribunal al decidir que el procedimiento reglamentario no es el procedimiento administrativo de una agencia que deba cumplirse para obtener información y que el *mandamus* es el remedio adecuado en ley.

Por las razones expuestas, confirmaría la resolución recurrida.

**LADY ALFONSO DE CUMPIANO**
**Juez de Apelaciones**